IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENISE M. WATTS,                                         Case No.

      Plaintiff

v.                                                       JURY TRIAL DEMANDED

NATIONAL ENTERPRISE SYSTEMS, INC.
an Ohio Corporation,

      Defendant.
_____/

## COMPLAINT FOR DAMAGES WITH JURY TRIAL DEMAND

### I.     INTRODUCTION

1. This is an action for damages brought by an individual consumer for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq* (hereinafter "FDCPA"), and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, *et seq* (hereinafter "FCCPA"); these laws prevent debt collectors and "persons" from, *inter alia*, engaging in abusive, deceptive, harassing, and unfair collection practices.

### II.    JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331, 1337, 1367, and Fla. Stat. § 559.77(1).

3. Venue lies in this District pursuant to 28 U.S.C. § 1391(d), as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

### III.   PARTIES

4. Plaintiff, DENISE M. WATTS (hereinafter "Plaintiff"), is a natural person who resides in the County of Hillsborough, State of Florida, and is a "consumer" as that term is defined

  by 15 U.S.C. § 1692a(3) and Fla. Stat. § 559.55(2), and is also a person with standing to bring a claim under the FDCPA by virtue of being directly affected by a violation of the Act.

5.  Defendant, NATIONAL ENTERPRISE SYSTEMS, INC. (hereinafter "National Enterprise" or "Defendant"), is a for-profit entity incorporated under the laws of the state of Ohio, with its principal place of business located at 29125 Solon Road, Solon OH 44139; it is alleged that Defendant is a "debt collector," as that term is defined by 15 U.S.C. § 1692a(6) and Fla. Stat. § 559.55(6), as, in the regular course of its business, it collects or attempts to collect debts owed or due or asserted to be owed or due another, and is also an "out-of-state consumer debt collector," as that term is defined by Fla. Stat. § 559.55(8) as its business activities in this state involve collecting or attempting to collect consumer debt from debtors located in this state by means of interstate communication originating from outside this state.

IV.  FACTUAL ALLEGATIONS

-First Phone Call at Plaintiff's Place of Employment-
-June 7, 2011-

6.  On or about June 7, 2011, while Plaintiff was working, she received a call from a male representative of Defendant on her work telephone number.

7.  The male representative offered his name, Mike Miller ("Miller"), as well as the name of the collection agency from which he was calling, "NES."

8.  Plaintiff advised Miller that she was unable to talk about this matter with him while she was at work and asked Miller for a phone number with which she could return his call when she got home.

9. Miller responded to the effect of, "You're a department manager there at [Plaintiff's place of employment]; why don't you go to your office, close the door and we can talk about this in private."

10. Plaintiff advised Miller that what he suggested was not possible and again asked Miller to provide a phone number with which she could call him back when she got home from work.

11. Miller complied and provided Plaintiff with a phone number and extension.

-Phone Call Later that Day-
-June 7, 2011-

12. Later that day when Plaintiff arrived home from work, at approximately 6:45pm, Plaintiff returned Miller's call.

13. During this call Miller stated to Plaintiff that he was "trying to help" her, so he was willing to take the balance owed of approximately $13,481.56 and "lower" it to $4,900.00.

14. Miller asked Plaintiff if she had any friend or family from whom she could obtain money.

15. Plaintiff advised that she did not.

16. Miller than advised that Defendant would accept monthly payments, but only if Plaintiff could pay, up front, a lump sum of 10% of the full approximate balance owed.

17. Plaintiff again repeated that she could not afford to agree to that.

18. Miller then asked Plaintiff if she could hold for a moment and soon thereafter the call was transferred to a female representative of Defendant, Aisha Copeland ("Copeland").

19. Copeland advised that she was taking over the call as Plaintiff's account was an "unresolved issue."

20. Copeland repeated many of the items that Miller provided to Plaintiff and Plaintiff provided the same answers.

21. Copeland then asked if Plaintiff's husband was aware of this debt.

22. Plaintiff advised that, yes, of course her husband knew, as his name was also on the account.

23. Representative Copeland then stated that Plaintiff's name was the only name on the account, and that is why Bank of America is "attacking" [representative's word] Plaintiff only, and not her husband.

24. It is alleged that, as the call progressed, Copeland became increasingly frustrated and noticeably agitated with Plaintiff, to the point that Plaintiff asked if Copeland could "please calm down."

25. Copeland said that she was sorry if that was how Plaintiff felt.

26. After further requests of Plaintiff for payment, which Plaintiff did not agree to, Copeland ended the phone call.

-Second Phone Call at Plaintiff's Place of Employment-
-June 9, 2011-

27. On or about June 9, 2011, at approximately 4:45pm, Plaintiff received a phone call from a female representative of Defendant, while Plaintiff was at work.

28. Plaintiff, immediately upon realizing the source and nature of this phone call, advised the caller that she [Plaintiff] was not able to discuss this matter while at work.

29. At the time that Plaintiff made this statement, there were several customers and several of Plaintiff's co-workers within close, audible range.

30. Plaintiff asked the female caller to give Plaintiff her name and extension number, and Plaintiff would return the call when she got home later that day.

31. The female caller stated that the matter that she was calling about could not wait as it was an "unresolved issue."

32. As this conversation ensued, Plaintiff's superior saw that Plaintiff was on the phone and began to make his way over to Plaintiff as he could see that she had a "look of concern" on her face.

33. Plaintiff was fearful that her superior would see that she was on a personal phone call discussing a personal matter, so she quickly told the woman on the phone that she [Plaintiff] would call Defendant back later, and Plaintiff hung up the phone.

34. Due to Plaintiff's facial expression that he observed, when Plaintiff's boss approached her after the phone call, he asked her "Is everything alright?"

35. Plaintiff felt extremely uncomfortable, scared, and sick to her stomach as a result of this call, and had trouble getting her head back into her work duties.

-Phone Call Later that Day-
-June 9, 2011-

36. Later that day, when Plaintiff arrived home from work, she called Defendant and told the woman who answered what happened earlier that day.

37. Plaintiff requested to speak with a representative regarding this account.

38. Plaintiff was connected to a male representative by the name of Raymond Sawyer ("Saywer").

39. It is alleged that, during this call, Sawyer spoke to Plaintiff in a condescending tone and an overall rude manner.

40. Sawyer repeated over and over that Plaintiff was "not serious."

41. Sawyer stated that he would note that Plaintiff was "refusing to pay," and as a result he would advise Bank of America of this so that it would have its lawyers sue Plaintiff.

42. In a rude tone Sawyer asked Plaintiff if she had ever been sued.

43. Sawyer advised that he was able to agree to lower the down payment to $650.00, rather than the 10% previously offered.

44. Plaintiff stated that, though she appreciated the offer, sadly, she cannot afford even that and offered to pay a down payment of $200.00.

45. Sawyer said to the effect of, "Mrs. Watts, you sound like a nice lady but frankly we can't trust you to make any payment without a down payment first."

46. He again asked if Plaintiff could pay $650.00 to which Plaintiff again responded that she could not afford that.

47. Sawyer then said to the effect that he had other clients to speak with and he was through speaking with Plaintiff as she was refusing to pay.

48. Plaintiff found herself intimidated by Sawyer's tone and was fearful of what effect a "refusal to pay" would have, so she quickly asked Sawyer if she could let him know a decision the next day.

49. Sawyer stated to the effect of, "Absolutely not. You have to let me know now, or never."

50. Further, he said to the effect of, "Mrs. Watts, you seem to want to dictate how you are going to handle this situation. I don't think you understand. You owe a major financial institution $13,481.56. You need to come face to face with this situation and tell me how you plan to resolve it."

51. Plaintiff again asked if she could call him back the next day and stated that she has done that in the past, where she had returned Defendant's calls, and asked for Sawyer's extension.

52. Sawyer stated to the effect that he sees that Plaintiff has returned calls to Defendant in the past, but that doesn't entitle Plaintiff to "win any awards" for calling back.

53. Sawyer told Plaintiff to "not bother" to call back later and that Plaintiff must make a commitment to him right then and there.

54. Plaintiff told Sawyer that she was unable to come up with an answer at that time and that she wasn't going to make any promises that she could not keep.

55. Once again, Sawyer told Plaintiff that he was going to note that Plaintiff was refusing to pay and once again Plaintiff advised that she was not.

-Phone Call on June 13, 2011-

56. On or about June 13, 2011, while at home, Plaintiff received a call from Defendant.

57. As the male caller asked for Plaintiff by name and began explaining why he was calling, Plaintiff recognized the man's voice to be that of Raymond Sawyer.

58. As Sawyer continued explaining the nature of his call, it became obvious to Plaintiff that Sawyer did not remember Plaintiff from a few days prior.

59. Plaintiff interrupted Sawyer and asked him if he was Mr. Sawyer, to which the caller responded that yes, he was.

60. Plaintiff informed him that the two had spoken a few days prior.

61. Sawyer then began stating many similar statements such as this matter being an unresolved issue, etc.

62. Plaintiff reminded Sawyer that he had told Plaintiff to not call him back, and referenced the earlier call.

63. Sawyer then asked Plaintiff about making the $650.00 down payment and Plaintiff stated that she was unable to do so.

64. Sawyer stated to the effect that he was now going to have to turn the matter over to Bank of America's lawyers and then he ended the call.

-Common Allegations-

65. Defendant was attempting to collect a defaulted obligation originally owed to Bank of America, account number ending in 5104; this debt was incurred for Plaintiff's personal, family, or household purposes, and is therefore a "debt" or "consumer debt," as those terms are defined by 15 U.S.C. § 1692a(5) and Fla. Stat. § 559.55(1).

66. It is alleged that Defendant's actions were performed with the intent to coerce Plaintiff into paying a defaulted consumer debt.

67. All acts or omissions of the employees/agents of Defendant were performed within the scope of their respective employment/agency, thus subjecting Defendant to vicarious liability for these acts under the doctrine of *respondeat superior*.

68. To date, no lawsuit has been filed by Bank of America against Plaintiff, as threatened by Defendant's representatives.

69. Defendant's attempts to collect this debt caused Plaintiff mental anguish in the forms of stress, worry, loss of sleep, and fear of her employment being compromised.

V. CLAIMS FOR RELIEF

-Count I-
Violations of the Federal Fair Debt Collection Practices Act

Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 69.

70. The foregoing acts and omissions of Defendant and its employees/agents constitute numerous and several violations of the FDCPA, including, but not limited to, 15 U.S.C. §§ 1692c(a)(1), 1692c(a)(3), 1692d generally, 1692d(2), 1692e generally, 1692e(5), 1692e(7), 1692e(10), 1692f generally, and 1692f(1).

71. As a result of the above violations of the FDCPA, Plaintiff is entitled to recovery for actual damages, statutory damages, and attorney's fees and costs.

## -Count II-
## Violations of the Florida Consumer Collection Practices Act

Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 69.

72. The foregoing acts and omissions of Defendant and its employees/agents constitute violations of the FCCPA, including, but not limited to, Fla. Stat. §§ 559.72(4), 559.72(7), and 559.72(8).

73. As a result of Defendant's violation of the FCCPA, Plaintiff is entitled to a declaratory judgment that Defendant's conduct violated the FDCPA and FCCPA, and recovery for actual damages, statutory damages, punitive damages, and attorney's fees and costs.

### VI.  RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment against Defendant for the following:

    a. Equitable relief in the form of a Declaratory Judgment that Defendant's acts constituted violations of the FDCPA and FCCPA, pursuant to Fla. Stat. § 559.77(2);

    b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1) and Fla. Stat. § 559.77(2);

    c. Statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A) and Fla. Stat. § 559.77(2);

    d. Punitive damages, pursuant to Fla. Stat. § 559.77(2);

    e. Costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3) and Fla. Stat. § 559.77(2); and

    f. Such other and further relief that this Court may deem just and proper.

        Respectfully submitted,

        /s/ Joseph B. Battaglia
        G. Donald Golden, Fla. Bar No.: 0137080
        don@brandonlawyer.com
        David S. Bromley, Fla. Bar No.: 0155349
        david@brandonlawyer.com
        Joseph B. Battaglia, Fla. Bar No. 0058199
        joe@brandonlawyer.com
        THE GOLDEN LAW GROUP
        808 Oakfield Drive, Suite A
        Brandon, Florida 33511
        Telephone:  (813) 413-8700
        Facsimile:   (813) 413-8701
        Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff demands trial by jury in this action.

        /s/ Joseph B. Battaglia
        Joseph B. Battaglia, Fla. Bar No. 0058199